John F. MURPHY, Plaintiff, Appellant,

v.

UNITED STATES of America,
Defendant, Appellee.

No. 94–1070.

United States Court of Appeals,
First Circuit.

Heard Nov. 9, 1994.

Decided Jan. 25, 1995.

Stephen J. Lyons with whom Klieman, Lyons, Schindler, Gross & Pabian, Boston, MA, was on brief, for appellant.

Kenneth W. Rosenberg, Atty., Tax Div., with whom Loretta C. Argrett, Asst. Atty. Gen., Gary R. Allen and Kenneth L. Greene, Attys., Tax Div., Dept. of Justice, Washington, DC, and Donald K. Stern, U.S. Atty., Boston, MA, were on brief, for appellee.

Before CYR, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

This appeal arises from the dismissal of a suit brought by plaintiff-appellant John Murphy for a tax refund and damages stemming from an alleged illegal or erroneous tax collection. Because we agree with the district court that Murphy has failed to establish a waiver of sovereign immunity, we affirm.

## I.

### Background

Prior to 1972, Murphy formed Capeway Construction Company ("Capeway") as a partnership with Edward Laffey. In 1972, Capeway failed to submit payroll taxes to the federal government for the quarters ending on June 30 and September 30 of that year. At the end of 1972, Capeway terminated its business, leaving an outstanding payroll tax liability of $9,442.13. Capeway's sole remaining asset at that time was a parcel of real estate located in Easton, Massachusetts, which Capeway had acquired in 1971 for approximately $5,000 ("the Property"). The Capeway Property was subject to a first mortgage in favor of Wingate and Louise Chadbourne.

In January 1974, the Internal Revenue Service ("IRS") assessed Capeway $13,994.09 for the unpaid payroll tax liability. Because Capeway failed to satisfy the obligation, the IRS looked to Murphy and Laffey who, as partners, were individually liable for the tax liability. See 26 U.S.C. § 6671(b).

In April 1974, the IRS served the partners with a notice of seizure of the Property. Prior to service of the notice, two IRS officers had advised Murphy that the agency intended to sell the Property and apply the proceeds to the outstanding tax liability. In August 1974, the IRS filed an action against Murphy and Laffey in federal district court seeking judgment in the amount of the payroll tax liability. On July 25, 1977, the district court entered judgment against Murphy and Laffey in the amount of $19,711.22 [1] and ordered the foreclosure and sale of the Property at public auction by the U.S. Marshal. The order specified that a minimum bid of $4,000 would be required at the auction. The order further stated that, after paying the costs of the sale, the proceeds were to be applied first to satisfy the outstanding mortgage on the Property, then to cover the costs of the United States in the action, and finally to the outstanding judgment. [2]

In 1977, the U.S. Marshal's office made two unsuccessful attempts to sell the Property. No further effort to sell the Property was ever undertaken. [3] Over the course of the next eight years, the IRS never notified Murphy that the Property had not been sold, and Murphy does not allege that he ever inquired as to the disposition of the Property. The record does not disclose what happened to the local tax bills on the property during the intervening years. We assume that the taxes were not paid, for in 1985, after the IRS released its federal tax lien, the Town of Easton foreclosed on the Property pursuant to a final decree obtained in Massachusetts state court against Murphy and Laffey for their failure to pay the local real estate taxes. The IRS did not notify Murphy that it had released its federal tax lien.

In December 1989, the IRS resumed its efforts to collect the unpaid payroll taxes by issuing a final notice of tax due to Murphy for the sum of $43,468.98. On July 16, 1990, Murphy received a second final notice, which stated that the sum due was $19,311.97. On August 20, 1990, Murphy made a payment to the IRS in the amount of $19,351.74, which purported to satisfy in full his obligation as responsible party for Capeway's outstanding payroll tax liability. [4]

---

1. This amount purported to account for $13,994.09 in outstanding taxes, penalties, and interest; $6,020.53 in statutory additions; and $335.24 for the costs of the action.

2. The order, which Murphy attached to the complaint, also stated that, if any surplus remained, it should be distributed "pursuant to a further Order of the Court."

3. Subsequently, Edward Laffey was released from liability due to his inability to pay.

4. Though it is not entirely clear from the record, Murphy's counsel at oral argument stated that both parties agreed that this payment did in fact fully satisfy Murphy's obligation for the 1972 payroll taxes. Government's counsel did not dispute this statement.

On September 5, 1990, Murphy filed a refund application with the IRS, claiming that the seizure of the Property and its ordered sale should have rendered proceeds adequate to satisfy his tax liability. On March 5, 1992, the IRS disallowed his application. On July 1, 1992, Murphy filed a second application for refund on which the IRS took no action. On March 9, 1993, Murphy filed this suit against the United States seeking a refund and other relief pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. §§ 7430 and 7433. In his Complaint, Murphy alleged that the government had exercised "dominion and control" over the Property and had "breached its obligation to liquidate and/or dispose of the property in a reasonable manner." The district court dismissed the suit on motion of the United States for lack of subject matter jurisdiction. This appeal followed.

## II.

### Discussion

Murphy contends that the district court erred in dismissing his suit for lack of subject matter jurisdiction. He claims that jurisdiction obtained under 28 U.S.C. § 1346(a)(1) for a refund of erroneously collected taxes and under 26 U.S.C. § 7433 for damages. We first outline the doctrine of sovereign immunity and the requisite standard of review, and then proceed to discuss each argument in turn.

 It is well settled that the United States, as sovereign, may not be sued without its consent. *E.g., United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). Jurisdiction must be found in an express Congressional waiver of immunity or consent to be sued. *See, e.g., United States v. Mottaz,* 476 U.S. 834, 841, 106 S.Ct. 2224, 2229, 90 L.Ed.2d 841 (1986); *Sibley v. Ball,* 924 F.2d 25, 28 (1st Cir.1991). In general, statutes waiving sovereign immunity should be strictly construed in favor of the United States. *See United States v. Michel,* 282 U.S. 656, 659–60, 51 S.Ct. 284, 285–86, 75 L.Ed. 598 (1931); *Gonsalves v. IRS,* 975 F.2d 13, 15 (1st Cir.1992) (per curiam); *Schon v. United States,* 759 F.2d 614, 617 (7th Cir.1985). *See also* Charles A.

Wright, Arthur R. Miller & Edward H. Cooper, 14 *Federal Practice and Procedure* § 3654 at 194–95 (2d ed. 1985). "Courts may not 'enlarge ... beyond what the language [of the statute creating the waiver] requires.'" *Gonsalves,* 975 F.2d at 16 (alterations in original) (quoting *Eastern Transp. Co. v. United States,* 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927)).

 We review *de novo* a district court's dismissal for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1). *Negron–Gaztambide v. Hernandez–Torres,* 35 F.3d 25, 27 (1st Cir.1994), *cert. denied,* — U.S. ——, 115 S.Ct. 1098, 130 L.Ed.2d 1066 (1995). Our review is similar to that accorded a dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Negron–Gaztambide,* 35 F.3d at 27. In reviewing the dismissal, we construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences. *See, e.g., K.W. Thompson Tool Co. v. United States,* 836 F.2d 721, 726 (1st Cir.1988). A plaintiff, however, may not rest merely on "unsupported conclusions or interpretations of law." *Washington Legal Found. v. Massachusetts Bar Found.,* 993 F.2d 962, 971 (1st Cir.1993). "[S]ubjective characterizations or conclusory descriptions of a general scenario which *could* be dominated by unpleaded facts" will not defeat a motion to dismiss. *Coyne v. City of Somerville,* 972 F.2d 440, 444 (1st Cir.1992) (internal quotations omitted). Finally, we conduct our review "mindful that the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 60 (1st Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 82, 126 L.Ed.2d 50 (1993).

### A. The 28 U.S.C. § 1346(a)(1) Claim.

Murphy first contends that the district court erred because jurisdiction lies under 28 U.S.C. § 1346(a)(1), which waives sovereign

immunity for tax-refund suits.[5] Murphy does not dispute his obligation for the outstanding payroll taxes or the amount of that obligation. Neither does Murphy contend that the government obtained anything of value as a result of its dealings with the Property. Essentially, he argues that, by virtue of the notice of seizure, the ensuing court order of foreclosure and the failure of the IRS to keep Murphy informed, the IRS took effective ownership of the Property without according him proper credit for its value. In other words, the actions of the government amounted to a de facto (and erroneous) collection of the Property entitling Murphy to a refund. We disagree.

Assuming *arguendo* that, under certain circumstances, the conduct of the IRS with respect to a seizure of property could constitute a de facto collection of owed taxes, Murphy does not allege facts sufficient to support such a claim. First of all, Murphy's Complaint asserts only that the IRS issued a notice of seizure, subsequently obtained an order of foreclosure from the district court, and failed to keep Murphy informed. The Supreme Court, however, has held that the IRS's seizure of property does not effect a transfer of ownership. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209–11, 103 S.Ct. 2309, 2316–17, 76 L.Ed.2d 515 (1983) (bankruptcy action). "Ownership of the [seized] property is transferred only when the property is sold to a bona fide purchaser at a tax sale." *Id.* at 211, 103 S.Ct. at 2317. Therefore, prior to a successful auction, the ownership of the Property remained with Capeway.

Moreover, Murphy's assertion that the IRS failed to notify him that the auctions were unsuccessful can give him no comfort. The district court's order directing the U.S. Marshal's office to sell the Property explicitly stated that a minimum bid of $4,000 was required. This clearly put Murphy on notice of the possibility that the ordered auction might not be successful.

Finally, though Murphy's Complaint states that the IRS exercised "dominion and control" over the Property subsequent to the two unsuccessful auction attempts, it alleges no facts in support of the conclusory statement. Murphy has not alleged conduct analogous to taking title, insuring and renting the property, *see United States v. Pittman*, 449 F.2d 623, 627 (7th Cir.1971), or negotiating a payment agreement directly with debtors on account receivables, *see Barlows, Inc. v. United States*, 36 B.R. 826, 829 (Bankr. E.D.Va.), *aff'd*, 53 B.R. 986 (E.D.Va.1984), *aff'd*, 767 F.2d 1098 (4th Cir.1985).[6] Though essentially asserting that the conduct of the IRS was sufficient to cause him to believe that the IRS had taken effective ownership of the Property, Murphy pleads no facts to illustrate what that conduct was. Murphy's claim cannot rest solely on the unsubstantiated conclusion that the IRS exercised "dominion and control."

Therefore, because Murphy's Complaint cannot be construed as asserting a claim for erroneous or illegal collection of taxes (as the IRS did not "collect" the Property), Murphy's claim cannot be considered a tax refund suit. Accordingly, no jurisdiction exists under 28 U.S.C. § 1346(a)(1). *See Cleveland Chair Co. v. United States*, 526 F.2d 497, 498–99 (6th Cir.1975) (no jurisdiction in refund suit where dispute centers on non-action

---

**5.** 28 U.S.C. § 1346 provides in relevant part:
(a) The district courts shall have original jurisdiction, concurrent with the United States Court of Federal Claims, of:
(1) Any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

**6.** In contrasting Murphy's allegations to the facts of *Pittman* and *Barlows*, we do not hold that the conduct found in those cases would necessarily support jurisdiction for a refund suit under 28 U.S.C. § 1346(a)(1). We cite them only to illustrate the point that Murphy has alleged no facts that support his claim that the IRS exercised "dominion and control" over the Property. Furthermore, the cases are distinguishable in that neither arose as a refund suit by a taxpayer. *See Pittman*, 449 F.2d at 624 (action to foreclose federal tax liens brought by the United States) *and Barlows*, 36 B.R. at 826 (motion in bankruptcy action to reduce tax lien subsequent to the IRS's filing of a proof of claim).

**524**

of a federal official in his capacity as a custodian and not on overpayment of taxes); *Film Truck Serv. v. Nixon*, 216 F.Supp. 77, 78 (E.D.Mich.1963) (no jurisdiction in refund suit where Complaint alleges government failed to dispose of seized property in most productive way possible).

### B. The 26 U.S.C. § 7433 Claim.

■ Murphy's claim for relief under 26 U.S.C. § 7433 is equally unavailing.[7] Congress enacted § 7433 "to give taxpayers 'a specific right to bring an action against the Government for damages sustained due to unreasonable actions taken by an IRS employee.'" *Gonsalves*, 975 F.2d at 15 (quoting H.R.Conf.Rep. No. 1104, 100th Cong., 2d Sess. 228 (1988)). Congress provided, however, that the statute should apply to actions occurring after the date of enactment, which was November 10, 1988. *Id.* at 17–18. Because all of the conduct of which Murphy complains (i.e., seizure and failure to sell the Property, failure to notify Murphy that the auctions were unsuccessful, and release of tax lien without notice to Murphy) occurred well before the date of enactment, 26 U.S.C. § 7433 does not provide jurisdiction for Murphy's claims.

### III.

### Conclusion

For the foregoing reasons, the district court's dismissal is affirmed. Costs to appellees.

---

**7.** 26 U.S.C. § 7433 provides in relevant part:
 (a) **In general**—If, in connection with any collection of Federal Tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally disregards any provision of this title, or any regulation promulgated under this title, such taxpayer may bring a civil action for damages against the United States in a district court of the United States. Except as provided in section 7432, such civil action shall be the exclusive remedy for recovering damages resulting from such actions.