Warren TOLMAN and the Tolman
Committee Plaintiffs,

v.

Honorable Thomas M. FINNERAN, as
Speaker of the Massachusetts House
of Representatives; Honorable Thomas
F. Birmingham, as President of the
Massachusetts State Senate; Michael
J. Sullivan, as Director of the Massachusetts Office of Campaign and Political Finance, and the Commonwealth of Massachusetts, Defendants.

No. CIV.A. 01–10756–PBS.

United States District Court,
D. Massachusetts.

Nov. 14, 2001.

Irwin B. Schwartz, Schwartz and Nystrom, LLC, Boston, MA, for Plaintiffs.

Peter Sacks, Attorney General's Office, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### I. *INTRODUCTION*

Plaintiffs Warren Tolman, a candidate for governor, and the Tolman Committee bring this action against the Honorable Thomas M. Finneran, Speaker of the Massachusetts House of Representatives; the Honorable Thomas F. Birmingham, President of the Massachusetts State Senate; Michael J. Sullivan, Director of the Massachusetts Office of Campaign and Political Finance ("OCPF"); and the Commonwealth of Massachusetts. All the named defendants are sued in their official capacity only. Plaintiffs allege that the defendants' refusal to fund fully the Massachusetts Clean Elections Law, Mass. Gen. Laws ch. 55A, violates their First and

Fourteenth Amendment rights, as well as the Massachusetts Declaration of Rights. Essentially, plaintiffs ask this federal court to order the state legislature to appropriate the funds.

Defendants bring a Motion to Dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and failure to state a claim on which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6). Defendants assert that plaintiffs' federal law claims are defective because (1) defendants Finneran and Birmingham possess absolute legislative immunity; (2) under the doctrine of sovereign immunity, the Commonwealth may not be sued in federal court under 42 U.S.C. § 1983, or state law; and (3) there is no allegation that the Director of OCPF has violated or will violate plaintiffs' federal rights. Finally, defendants state that relief cannot be granted on plaintiffs' federal claims because plaintiffs' First and Fourteenth Amendment rights have not been violated.[1]

Because the action is barred under the doctrine of sovereign and legislative immunity, Defendants' Motion to Dismiss First Amended Complaint (Docket No. 3) is *AL-LOWED.*

## II. *BACKGROUND*

### A. *Clean Elections Law*

On November 3, 1998, Massachusetts voters passed the Clean Elections Law, an initiative petition placed on the ballot in accordance with Massachusetts Constitution amendments Article 48. The Clean Elections Law, codified at Mass. Gen. Laws ch. 55A, allows a candidate to run as a "Clean Elections candidate." To do so, the candidate must receive a minimum number of "qualifying contributions." In addition, 'the candidate must limit the size of individual contributions to no more than

$100, and must not exceed allowable campaign expenditure and total contribution limits. Mass. Gen. Laws ch. 55A, §§ 1, 4, 6. Candidates not participating as "Clean Elections candidates" may accept up to $500 per contributor, and have no cap on the total amount they may collect in contributions or spend on the campaign.

If a candidate qualifies as a "Clean Elections candidate," the law entitles the candidate to receive public funds from the Massachusetts Clean Elections Fund. Mass. Gen. Laws ch. 55A, §§ 1, 7, 8. The statute states,

> (a) A certified candidate shall be eligible to receive distributions from the Massachusetts Clean Elections Fund in the following amounts:
>
> 1. For each of the following state offices, clean primary election funds for a certified candidate shall be limited to:
>
> Governor . . . . . . . . . . . . . . . . . . . . . . . $1,500,000
>
> .     .     .     .     .
>
> 2. For each of the following state offices, clean general elections funds for a certified candidate shall be limited to:
>
> Governor . . . . . . . . . . . . . . . . . . . . . . . $1,500,000

*Id.* at § 7. Section 8 of the Clean Elections Law governs the distribution of Clean Election funds. The statute mandates that, "[d]istributions from the Massachusetts Clean Elections Fund to certified candidates by the director [of the OCPF] shall, subject to appropriation, be made," according to deadlines based on the ends of qualifying periods, as well as primary and general elections. Mass. Gen. Laws ch. 55A, § 8.

---

1. Defendants have waived their claim that the     action is not ripe.

## B. The Claims

Warren Tolman is a candidate for governor of Massachusetts, and the Tolman Committee is organized under Mass. Gen. L. ch. 55 to support his candidacy. Tolman intends to run his candidacy pursuant to the state Clean Elections Law, Mass. Gen. L. ch. 55A. They seek declaratory and injunctive relief related to the lack of appropriations by the Massachusetts legislature for the Clean Elections Fund. Since 1999, the legislature has allocated a total of $20 million to the Clean Elections Fund. In May 2001, the state House of Representatives did not provide further funding but proposed instead that taxpayers, on their annual personal income tax returns, be permitted to contribute $100 each to the Fund. Further, it proposed to authorize up to $32 million in spending from the Clean Elections Fund in FY 2002. Plaintiffs allege that a total of $40 million must be placed in the fund to achieve full funding. They state that, at current funding levels, the Clean Elections Fund disbursements to which Tolman may be entitled as a Clean Elections candidate for governor will not be available.

Plaintiffs allege that they are irreparably harmed by the defendants' refusal to fund fully the Clean Elections Law. They state the House version of the budget bill contains no appropriation for the Clean Elections Fund, providing instead for a voluntary funding system. A vigorous proponent of the Clean Elections Law, Tolman claims that, by adhering to Clean Elections strictures—specifically limits on the acceptance of contributions—while (potentially) not receiving his full share of Clean Election funds, he will be "chilled in his access to the electoral process," suffer harm from the electorate's belief that his campaign cannot be properly financed, and be impaired in the exercise of his First Amendment rights.

Specifically, plaintiffs' First Amended Complaint [2] ("FAC") alleges that defendants have violated plaintiffs' First and Fourteenth Amendment rights by depriving Tolman of the benefits promised by the Clean Elections Law (Count I). It alleges a deprivation of plaintiffs' rights to "meaningfully participate" in the electoral process and a violation of the Equal Protection clause of the Fourteenth Amendment as a result of defendants' inactivity (Counts II and III). It requests a declaratory judgment that federal and Massachusetts law requires either the repeal or the full funding of the Clean Elections Law. (Count IV). Finally, the FAC alleges that defendants have violated plaintiffs' rights of freedom of speech and equal protection granted by the Massachusetts Declaration of Rights, Articles 1 and 16 (Count V).

Plaintiffs request preliminary and permanent injunctions requiring defendants and OCPF to "disburse all funds to satisfy its obligations under the Clean Elections Law for the 2002 Massachusetts election cycle." (FAC, Prayer A, p. 15.) They also request preliminary and permanent injunctions permitting the OCPF to "disburse as required under the Clean Elections Law all funds allocated or appropriated to the Massachusetts Clean Elections Fund for the Clean Elections Law." (FAC, Prayer B, p. 15.) Finally, Plaintiffs seek a declaration that Article 48 of the amendments to the Massachusetts Constitution requires the defendants either to repeal or fully fund the Clean Elections Law. (FAC, Prayer C, p. 15.)

---

2. Plaintiffs have also joined in litigation before the Supreme Judicial Court for Suffolk County, *Bates v. Sullivan,* No. SJ–2001–0448.

## III. STANDARD OF REVIEW

A motion to dismiss is subject to limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Under Fed.R.Civ.P. 12(b)(6), a court may grant dismissal only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir.1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Under Fed.R.Civ.P. 12(b)(1), the party invoking jurisdiction has the burden of proof to establish its existence. *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir.1995). In either case, the Court takes as true "the well-pleaded facts as they appear in the complaint, extending [the] plaintiff every reasonable inference in his favor." *Coyne v. City of Somerville*, 972 F.2d 440, 442–43 (1st Cir.1992); *see also Greebel v. FTP Software, Inc.*, 194 F.3d 185, 200 (1st Cir.1999). Plaintiffs may not, however, rely upon "unsupported conclusions or interpretations of law." *Murphy*, 45 F.3d at 522 (citation omitted).

## IV. DISCUSSION

### A. Legislative Immunity

■ Defendants seek dismissal of all claims against Speaker Finneran and President Birmingham (the "legislator defendants") based on the legislators' absolute immunity from legal claims for their legislative acts. "Absolute legislative immunity attaches to all actions taken in the sphere of legislative activity." *Bogan v. Scott–Harris*, 523 U.S. 44, 54, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998) (quotation omitted) (holding that legislative immunity does not depend on motivation for legislative action even if the motive was to impinge on plaintiff's free speech rights). As plaintiffs accuse the legislator defendants and the legislature of not properly appropriating money for the Clean Elections Fund, the complained-of actions fall into this legislative sphere. *See Bogan*, 523 U.S. at 55, 118 S.Ct. at 973 (holding acts of voting to be "quintessentially legislative," and the introduction of a budget to be "formally legislative.").

■ Plaintiffs argue that, in claims against the legislature, the Speaker of the House and the President of the Senate may properly be named as defendants. The First Circuit has refused to find a legislator liable merely because that legislator holds a position requiring him or her to preside over the legislative body and enforce its rules. *See Nat'l Ass'n of Social Workers v. Harwood*, 69 F.3d 622 (1995) (rejecting a constitutional challenge to a Rhode Island House of Representatives' rule restricting lobbyist access to the floor of the House by Plaintiff lobbyist groups against the Speaker of the House and the House's head doorkeeper as defendants under 42 U.S.C. § 1983). The First Circuit held that absolute legislative immunity protected the defendants, who "did nothing more than to interpret and enforce" the House's rule, stating:

> Where, as here, a legislative body adopts a rule, not invidiously discriminatory on its face ... that bears upon its conduct of frankly legislative business, we think that the doctrine of legislative immunity must protect legislators and legislative aides who do not more than carry out the will of the body by enforcing the rule as part of their official duties.

*Id.* at 631. Legislative immunity applies even when the relief sought is only equitable. *See id.* at 630 (stating that legislative immunity "immunizes [legislators] from

suits for either prospective relief or damages.") (quoting *Supreme Court of Virginia v. Consumers Union of U.S., Inc.,* 446 U.S. 719, 731, 100 S.Ct. 1967, 1974, 64 L.Ed.2d 641 (1980)). This immunity extends to state legislators named as defendants in § 1983 actions seeking declaratory and injunctive relief. *See Consumers Union* at 732, 100 S.Ct. 1967 (finding "little doubt" that if a legislature enacted an invalid law under the First Amendment and if a suit had been brought against the legislature, its committees or members for refusing to amend the law, absolute legislative immunity would have required dismissal).

■ The Supreme Court and the First Circuit have recognized that "absolute immunity" is not, in fact, an absolute ban on suing a legislator. "The [Supreme] Court has explicitly recognized that there may be some conduct, even within the legislative sphere, that is so flagrantly violative of fundamental constitutional protections that traditional notions of legislative immunity would not deter judicial intervention." *Nat'l Ass'n of Social Workers,* 69 F.3d at 634; *see Kilbourn v. Thompson,* 103 U.S. 168, 204, 13 Otto 168, 26 L.Ed. 377 (1880) (leaving open the question of whether "there may not be things done, in the one House or the other, of an extraordinary character, for which the members who take part in the act may be held legally responsible."). However, if the sole basis for a § 1983 action is the failure to pass legislation, legislative immunity would foreclose suit. *Consumers Union,* 446 U.S. at 734, 100 S.Ct. 1967 (distinguishing suits predicated on the actions of legislative members acting in a legislative rather than enforcement capacity). The failure, even if unconstitutional, to appropriate funds for an election reform does not constitute a flagrant violation of a fundamental constitutional protection so extraordinary as to abrogate legislative immunity.

*Nat'l Ass'n of Social Workers,* 69 F.3d at 634 (holding that legislative immunity is not forfeited simply because the activities, if unprotected, might violate a plaintiff's First Amendment rights).

**B. Sovereign Immunity of the Commonwealth**

■ Defendants also correctly argue that plaintiffs' claims against the Commonwealth under 42 U.S.C. § 1983 must be dismissed because the Eleventh Amendment bars federal suits by citizens against the state itself. "In the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *see O'Neill v. Baker,* 210 F.3d 41, 47 (1st Cir.2000) ("The Supreme Court has clearly said that the Eleventh Amendment bars federal suits by citizens against the state or state agencies and that this jurisdictional bar applies regardless of the nature of the relief sought." (internal quotation omitted)). Moreover, the state is not a "person" within the meaning of section 1983. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

■ In an attempt to elude the sovereign immunity bar, plaintiffs essentially ask this Court to order two legislative leaders, in their official capacities, to appropriate additional funds for the Clean Elections Fund. Case law makes clear that a suit against a state official in his or her official capacity, which is essentially a suit against the state itself, may be barred by the Eleventh Amendment regardless of whether injunctive or monetary relief is sought. *See Kentucky v. Graham,* 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d

114 (1985) (holding that an official capacity suit should be treated as a suit against the entity); *Pennhurst,* 465 U.S. at 101, 104 S.Ct. 900. Here, the relief sought is essentially against the state as neither Finneran nor Birmingham has the authority to appropriate funds on their own and as they are protected by absolute legislative immunity.

In response to the Court's challenge to find precedent to support the extraordinary relief sought, plaintiffs cite two school desegregation cases, *Griffin v. County School Bd. of Prince Edward County,* 377 U.S. 218, 233, 84 S.Ct. 1226, 12 L.Ed.2d 256 (1964), and *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), for the proposition that a District Court may grant prospective relief against a state legislature even when it has ancillary effects on the state treasury. In *Griffin,* the Supreme Court found it proper for the District Court to order the county Board of Supervisors to, "exercise the power that is theirs to levy taxes to raise funds adequate to reopen, operate, and maintain without racial discrimination a public school system . . . ." 377 U.S. at 233, 84 S.Ct. 1226. In *Milliken,* the Supreme Court affirmed the District Court's order that the state defendants pay half of the cost of a court-ordered desegregation plan. It held that, without contravening the Eleventh Amendment, under *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), federal courts may prospectively enjoin state officials "to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury." 433 U.S. at 289, 97 S.Ct. 2749.

*Griffin* does not aid the plaintiffs' attempt to name state legislators as parties to this action. In *Griffin,* the court ordered a local branch of government, the county board of supervisors, instead of individual state legislators, to levy taxes. County governments have long been subject to suit in federal court to vindicate federally guaranteed rights so long as the relief is not against the state treasury. *Griffin* 377 U.S. at 233, 84 S.Ct. 1226.

*Milliken* does provide plaintiffs some solace. It holds that the Eleventh Amendment does not bar federal courts from imposing on states the costs of securing prospective compliance with a desegration order. *See Missouri v. Jenkins,* 495 U.S. 33, 45 n. 20, 110 S.Ct. 1651, 109 L.Ed.2d 31 (1990). However, *Milliken* does not support a suit against members of the legislature. Rather, the defendants in *Milliken* were state enforcement officials (i.e., the Governor, the Attorney General and other non-legislative enforcement officers). *See Bradley v. Milliken,* 433 F.2d 897, 898 (6th Cir.1970). The exception to the Eleventh Amendment relies on the rationale that a suit challenging the constitutionality of a state official's action is not a suit against the state. *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) (enjoining state attorney general from enforcing an unconstitutional law). Perhaps this was a clever bluff (i.e., what if the legislature refused to fund the desegration order), but it has constitutional significance because legislative immunity was not implicated. *See Edelman v. Jordan,* 415 U.S. 651, 667, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

The interplay between the doctrines of legislative immunity, sovereign immunity, and its exception in *Ex parte Young,* governs this dispute. The Court has found no cases where a court has issued prospective injunctive relief against state legislators—either in their official or individual capacity—to require them to pass legislation to remedy a constitutional violation. Short of the exceptional case, it is unlikely that *Ex Parte Young* is broad enough to abrogate

legislative immunity and authorize suit against a legislator acting in a purely legislative capacity.

### C. *Plaintiffs' State Law Claims*

Plaintiffs' Fourth and Fifth counts assert only state law claims under Article 48 of the amendments to the Massachusetts Constitution and under the Massachusetts Declaration of Rights. This Court may not adjudicate such state law claims against state officials, regardless of an otherwise-valid pendent jurisdiction claim. "[A] claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment .... this principle applies as well to state-law claims brought into federal court under pendent jurisdiction." *Pennhurst*, 465 U.S. at 121, 104 S.Ct. 900. Nor does their request for declaratory relief save plaintiffs' state law claims. "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* at 106, 104 S.Ct. 900; *see also Benning v. Bd. of Regents of Regency Universities*, 928 F.2d 775, 778 (7th Cir.1991) (holding that a declaratory judgment by a federal court based on state law would constitute "an end-run around *Pennhurst* that is equally forbidden by the Eleventh Amendment.") Counts Four and Five of the Complaint are dismissed.

### D. *Insufficient Allegations Against the Director of OCPF*

Defendants seek dismissal of all claims against Michael Sullivan, Director of the OCPF, stating that the complaint does not allege any violation or prospective violation of Tolman's federal constitutional rights. Defendants also state that plaintiffs' prayers for relief merely request injunctions requiring the Director and the OCPF to "disburse all funds to satisfy its [sic] obligations under the Clean Elections law of the 2002 Massachusetts election cycle," and "permitting the OCPF to disburse as required under the Clean Elections Law all funds allocated or appropriated to the Massachusetts Clean Elections Fund for the Clean Elections Law." (FAC, Prayers A and B, p. 15.)

This Court agrees. Plaintiffs have not alleged that Director Sullivan has violated their constitutional rights as required by *Ex Parte Young*. By suing him in his official capacity only, plaintiffs acknowledge they are really suing the state. Moreover, Mr. Sullivan can't disburse what he doesn't have. Nor have plaintiffs alleged that Sullivan intends to disburse Clean Elections funds in any way other than according to law. Any remaining counts against Director Sullivan are dismissed without prejudice.

### V. *CONCLUSION*

For the reasons set forth above, Defendants' Motion to Dismiss First Amended Complaint (Docket No. 3) is ***ALLOWED***. The Court orders that Plaintiffs' First Amended Complaint be ***DISMISSED***.