Brian KENNEDY and Michelle Kennedy, Individually and as mother and next friend of Mitchell Kennedy and Dylan Kennedy, Brian Kennedy, Jr., William Ashton, Plaintiffs,

v.

TOWN OF BILLERICA, Daniel C. Rosa, Jr., Individually and as Chief of the Billerica Police Department, Andrew DeVito, William G. West, Sgt. Roy Frost, Steven Elmore, John Herring, John Doe, John Roe, Defendants.

Civil Action No. 08–11348–PBS.

United States District Court,
D. Massachusetts.

Jan. 12, 2009.

Andrew J. Brodie, III, Andrew M. Fischer, Jason & Fischer, Boston, MA, for Plaintiffs.

Leonard H. Kesten, Jeremy I. Silverfine, Brody, Hardoon, Perkins & Kesten, Boston, MA, for Defendants.

### ORDER

PATTI B. SARIS, District Judge.

After review of the objections, I adopt the report and recommendation and dismiss the action.

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS (# 4)

COLLINGS, United States Magistrate Judge.

### I. Introduction

On August 7, 2008 Brian and Michelle Kennedy, husband and wife, their three sons Mitchell, Dylan and Brian, Jr., and William Ashton instituted the present action against the Town of Billerica, the Chief of the Billerica Police Department, Daniel C. Rosa, Jr., individually and in his official capacity, and seven Billerica police officers, Andrew Devito, William G. West, Sgt. Roy Ford, Steven Elmore, John Herring, Joe Doe and John Roe. By their complaint (# 1), the plaintiffs seek the issuance of a restraining order, a preliminary injunction and a permanent injunction mandating the return of property alleged to have been improperly seized pursuant to search warrants and further ordering the defendants to stay away from the plaintiffs outside of the defendants' jurisdiction in Billerica. In lieu of answering the complaint, the defendants

filed a motion to dismiss (# 4) for lack of subject matter jurisdiction and failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) respectively, together with a memorandum in support (# 5). On October 20, 2008, the plaintiffs filed their opposition to the dispositive motion. (# 7) With the record complete [1], the motion to dismiss is poised for resolution.[2]

### II. The Facts

According to the allegations of the complaint, in 2004 the Kennedys filed a federal civil rights lawsuit against the same defendants, among others, "alleging 'a conspiratorial campaign by members of the Town of Billerica Police Department over a 13 year period to harass, intimidate and terrorize the plaintiffs through acts of violence and by abuse of their powers of arrest.'" (# 1 ¶ 9) In 2005 while their civil rights case was pending, the plaintiffs moved from Billerica, Massachusetts to Lowell, Massachusetts in an attempt to avoid ongoing harassment by, and confrontations with, the defendants. (# 1 ¶ 10) In mid-2006 the plaintiffs sought and were granted in the federal case a limited, assented-to order barring a particular Billerica police officer, not a defendant herein, from "driving past the plaintiffs' Lowell home." (# 1 ¶ 13 and Exh. B–1 [3]) Although a broader restraining order barring the Billerica police from coming near the plaintiffs' home in Billerica or continuing to harass them was denied, the denial was in conjunction with defense counsel's agreement "to serve as intermediary for

---

1. On December 2, 2008, the Court issued a Procedural Order requiring the parties to provide certain information with respect to state proceedings resulting from the July 2008 searches of the plaintiffs' residence. The parties have filed responses to that Order. (## 9, 10)

2. This motion has been referred to the undersigned for the issuance of a Report and Recommendation as to disposition under 28 U.S.C. § 636(b)(1)(B).

3. The text of the Order further reads: "Defendants contest plaintiff's (sic) allegations regarding the alleged harassment." (# 1, Exh. B–1)

any complaints by the plaintiffs of further contact or harassment." (# 1 ¶ 13) These combined actions resulted in a temporary hiatus in confrontations between the parties. (# 1 ¶ 14)

Trial in the federal civil rights case was bifurcated, with the first trial in April, 2007 resulting in a jury verdict primarily for the Kennedy sons in the amount of $600,000.00. (# 1 ¶ 15) On Friday September 7, 2007, Billerica police officers purportedly beat and then arrested Mitchell and Dylan Kennedy at a local Wendy's restaurant, a post-football game hangout for Billerica High School students.[4] (# 1 ¶ 17) In the ensuing days, the plaintiffs "obtained recorded statements on audio and video of more than twenty witnesses" to the events that took place at the Wendy's restaurant that night. (# 1 ¶ 18) Trial on the criminal charges against Dylan Kennedy arising out of his September 7th arrest was scheduled for the week of July 7, 2008.[5] (# 1 ¶ 19)

The second federal civil trial took place in October, 2007, and resulted in a plaintiffs' verdict. (# 1 ¶ 16) The defendants' motion for judgment notwithstanding the verdict was allowed with respect to the substantive due process and intentional infliction of emotional distress claims against one of the officers in July of 2008.[6] (# 1 ¶ 16)

On July 1, 2008, four of the named defendants in this case executed a search warrant for certain itemized pieces of jewelry and guns at the plaintiffs' home. (# 1 ¶ 20) According to the plaintiffs, "defendants DeVito, West, Frost, and Doe had a SWAT team batter down the plaintiffs'

front door with a battering ram, just before 10:00 pm, storm the premises while hurling flash grenades and subdue the plaintiffs." (# 1 ¶ 20) It is alleged that:

> While searching for items listed on the warrant, the defendant officers grabbed a box of videotapes, which they believed contained video of the witnesses to the Wendy's incident, video of the harassment that was the basis of the first Federal civil rights case (which the defendants had alleged and still claim the plaintiffs had deliberately withheld as evidence), and video, particularly of Officer Mark Tsoukalas, of the harassment in November, 2005 and thereafter, that was the basis for the motion for restraining order [sought in June 2007 in the federal civil rights case].

Complaint # 1 ¶ 21.

Essentially the plaintiffs claim that the defendants used the search warrant improperly for their own purposes and advantage in pending/anticipated civil and criminal proceedings, to wit, seizing "videotapes that both depict harassment by the Billerica police and include witness statements describing other acts of harassment (the Wendy's assault and arrest)" that were not property described in the warrant. (# 1 ¶ ¶ 22–24)

It is the plaintiffs' contention that during the July 1st search the defendants seized many items not authorized by the warrant such as a digital camera, cash, a hunting knife, and so on. (# 1 ¶ ¶ 25–26) Moreover, while the defendants were in the plaintiffs' home, they took photographs of the plaintiffs' personal property, for ex-

---

4.  Although the Kennedy plaintiffs moved out of Billerica in 2005, the three Kennedy sons continued to attend Billerica public schools. (# 1, Exh. B–2 ¶ 7)

5.  The felony charge against Mitchell Kennedy was dropped. (# 1 ¶ 19)

6.  The motion JNOV was allowed in part and denied in part, but the detailed particulars of the ruling are not pertinent here. *See* docket 04–cv–12357–PBS, # 364.

ample, jewelry, rare coins, and a computer. (# 1 ¶ 31) Based on observations made during that initial search, the defendants obtained a second search warrant for stolen goods and on July 18, 2008 again entered the plaintiffs' home. During that second search in which the defendants seized numerous items including a computer, jewelry and coins, the plaintiffs contend that the defendants again took items, i.e., cash, for which they did not account on the warrant return. (# 1 ¶ ¶ 32–34) On July 29, 2008, defendant Sgt. Frost e-mailed plaintiffs' counsel offering to return to the plaintiffs "[s]ome of the property seized [that] has not been identified as stolen from known victims." (# 1 ¶ 35 and Exh. J)

The plaintiffs allege that, although the Lowell police were present when both search warrants were executed, the two July 2008 searches were conducted by the Billerica police in Lowell outside of their jurisdiction. (# 1 ¶ 36) According to the Kennedys and Ashton, there is no need for the defendant police officers to have contact with the plaintiffs outside of their jurisdiction of Billerica, and, further, that sound police practices would have mandated that the Lowell Police conduct the July 2008 searches, as well as any additional future searches that may be authorized. (# 1 ¶ ¶ 37–38) Given the history between the parties, the plaintiffs claim to be in fear of the defendants; they additionally "fear that further searches will be arranged in order to continue to take whatever cash the plaintiffs may earn." (# 1 ¶ ¶ 39–40) In the plaintiffs' view:

> The only way to avoid the likelihood of further allegations of theft of money and other property from the plaintiffs by the defendants is for the defendants to be enjoined from searching the plaintiffs' home or possessions. No law enforce-

ment function will be compromised as any warrant against the defendants (sic) could and should be served and executed by the Lowell Police. In fact doing so would insure that there is no appearance of impropriety based upon the enmity between the parties.

Complaint # 1 ¶ 41.

By way of relief, the plaintiffs seek a restraining order, a preliminary injunction and a permanent injunction, all pursuant to Massachusetts General Laws chapter 12 § 11J[7], and all ordering the defendants to return items that were improperly seized in the July 2008 searches, ordering the defendants to stay away from the Kennedys outside of Billerica, and ordering the defendants "to allow the Lowell Police to serve any warrants or carry out any other police activities with respect to the Kennedys that can be effected in Lowell." (# 1 at 11–12 ¶ ¶ A–C) The plaintiffs also request attorneys' fees and the costs of the litigation. (# 1 at 12 ¶ D)

### III.  The Law Re: Motions To Dismiss

▮▮▮ Pursuant to Rule 12(b)(1), Fed. R.Civ.P., a defendant may move to dismiss an action based on lack of federal subject matter jurisdiction. Because federal courts are considered courts of limited jurisdiction, "federal jurisdiction is never presumed." *Viqueira v. First Bank,* 140 F.3d 12, 16 (1 Cir., 1998). Instead, "'the party invoking the jurisdiction of a federal court carries the burden of proving its existence.'" *Murphy v. United States,* 45 F.3d 520, 522 (1 Cir.), *cert. denied,* 515 U.S. 1144, 115 S.Ct. 2581, 132 L.Ed.2d 831 (1995) (quoting *Taber Partners, I v. Merit Builders, Inc.,* 987 F.2d 57, 60 (1 Cir.), *cert. denied,* 510 U.S. 823, 114 S.Ct. 82, 126 L.Ed.2d 50 (1993)); *see also Johansen v. U.S.,* 506 F.3d 65, 68 (1 Cir., 2007).

---

**7.** Although the plaintiffs allege the statute to be Mass. Gen. L. c. 12 § 12J, no such section exists and the reference is clearly meant to be Mass. Gen. L. c. 12 § 11J.

■ Once a defendant challenges the jurisdictional basis for a claim under Rule 12(b)(1), the plaintiff bears the burden of proving jurisdiction. *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942); *Aversa v. United States*, 99 F.3d 1200, 1209 (1 Cir., 1996); *Murphy*, 45 F.3d at 522. The First Circuit has held that the proponent must clearly indicate the grounds upon which the Court may properly exercise jurisdiction over the matter presented: " '[I] t is black-letter law that jurisdiction must be apparent from the face of the plaintiffs' pleading.' " *PCS 2000 LP v. Romulus Telecomms., Inc.*, 148 F.3d 32, 35 (1 Cir., 1998) (quoting *Viqueira*, 140 F.3d at 18); *Johansen*, 506 F.3d at 68. As a consequence, if the plaintiff fails to show a basis for either diversity or federal question jurisdiction, the district court must grant the defendant's Rule 12(b)(1) motion.

■ In ruling on a motion to dismiss for lack of jurisdiction, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." *Aversa*, 99 F.3d at 1210; *Johansen*, 506 F.3d at 68; *Murphy*, 45 F.3d at 522. A plaintiff cannot assert a proper jurisdictional basis "merely on 'unsupported conclusions or interpretations of law.' " *Murphy*, 45 F.3d at 522 (quoting *Washington Legal Foundation v. Massachusetts Bar Foundation*, 993 F.2d 962, 971 (1 Cir., 1993)); *Johansen*, 506 F.3d at 68.

Like a motion under Rule 12(b)(1), a Rule 12(b)(6) motion to dismiss too requires the Court to " 'tak[e] the allegations in the complaint as true and mak[e] all reasonable inferences in favor of the plaintiff.' " *Doran v. Mass. Turnpike Auth.*, 348 F.3d 315, 318 (1 Cir., 2003), *cert. denied*, 541 U.S. 1031, 124 S.Ct. 2107, 158 L.Ed.2d 712 (2004) (quoting *Rockwell v.*

*Cape Cod Hosp.*, 26 F.3d 254, 255 (1 Cir., 1994)); *Barrett ex rel. Estate of Barrett v. U.S.*, 462 F.3d 28, 32 (1 Cir., 2006), *cert. denied*, —— U.S. ——, 127 S.Ct. 2265, 167 L.Ed.2d 1093 (2007). A party moving under Rule 12(b)(6) asserts that an opponent's claims are unavailing because the underlying allegations, even if true, fail "to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6).

A party's Rule 12(b)(6) motion to dismiss challenges the ability of an opponent's complaint to state a claim. The Supreme Court in *Bell Atlantic* adopted the view that the complaint must allege facts that give rise to "a reasonable expectation" of relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). Courts have no duty " 'to conjure up unpleaded facts that might turn a frivolous claim . . . into a substantial one.' " *Bell Atlantic*, 550 U.S. 544, 127 S.Ct. at 1969 (quoting *O'Brien v. DiGrazia*, 544 F.2d 543, 546, n. 3 (1 Cir., 1976), *cert. denied sub nom. O'Brien v. Jordan*, 431 U.S. 914, 97 S.Ct. 2173, 53 L.Ed.2d 223 (1977)). Thus, the claims in the complaint must be specific enough to cross "the line from conceivable to plausible." *Bell Atlantic*, 550 U.S. 544, 127 S.Ct. at 1974.

## IV. Discussion

The plaintiffs seek no monetary damages in this suit, only injunctive relief with respect to the return of "all of the improperly seized property . . . and further ordering the defendants to stay away from the Kennedys outside of the defendants' jurisdiction in Billerica and to allow the Lowell Police to serve any warrants or carry out any other police activities with respect to the Kennedys that can be effected." The threshold question is whether the plaintiffs have alleged a viable federal

claim under 42 U.S.C. § 1983[8] that will afford them the relief requested.

### A. Younger *Abstention*

▮ First the plaintiffs seek the return of property they claim was allegedly improperly seized pursuant to two search warrants issued by a state Superior Court judge. In response to the Court's Procedural Order, defendants' counsel has advised that, in fact, criminal proceedings resulting from the searches at issue in this litigation have commenced and are ongoing in the state court. (# 9) Therefore, what the plaintiffs really are asking is for this Court to interfere with the ongoing state court criminal proceedings and determine what, if any, items were improperly seized pursuant to two state court warrants and then order the state authorities to return those items. These facts present the quintessential scenario for the application of the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

▮ The *Younger* abstention doctrine provides that:

> In the absence of extraordinary circumstances, interests of comity and the respect for state processes demand that federal courts should abstain from interfering with ongoing state judicial proceedings. *See, e.g., Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Middlesex Co. Ethics Comm. v. Garden State Bar Assn'*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

*Esso Standard Oil Co. v. Lopez–Freytes*, 522 F.3d 136, 143 (1 Cir., 2008); *Rossi v. Gemma*, 489 F.3d 26, 34 (1 Cir., 2007). Since its nascence, "the doctrine [has been] frequently associated with state criminal prosecutions." *Rossi*, 489 F.3d at 34; *Rio Grande Community Health Center, Inc. v.*

*Rullan*, 397 F.3d 56, 68–69 (1 Cir., 2005). As explained by the First Circuit:

> Following Supreme Court case law, *see Middlesex County*, 457 U.S. at 432, 102 S.Ct. 2515, we have articulated the basic analytical framework for *Younger* abstention. Abstention is appropriate when the requested relief would interfere (1) with an ongoing state judicial proceeding; (2) that implicates an important state interest; and (3) that provides an adequate opportunity for the federal plaintiff to advance his federal constitutional challenge. *See Brooks v. N.H. Supreme Court*, 80 F.3d 633, 638 (1st Cir.1996); *Bettencourt v. Bd. of Registration in Med.*, 904 F.2d 772, 777 (1st Cir.1990).

*Rossi*, 489 F.3d at 34–35 (footnote omitted).

The tri-partite test articulated by the First Circuit for determining whether *Younger* abstention should be applied is satisfied here.

First, as the defendants have advised the Court and the plaintiffs do not deny, criminal proceedings based upon the July 2008 searches are ongoing in the state court. (# 9)

Second, the Commonwealth of Massachusetts quite plainly has a very significant state interest in prosecuting those who violate the state criminal law. "Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation." *Middlesex County Ethics Committee v. Garden State Bar Assn'*, 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 12–13, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987); *Casa Marie, Inc. v. Superior Court of Puerto Rico for Dist. of*

---

**8.** Any claim under 42 U.S.C. §§ 1985 and 1988 will rise or fall as does the § 1983 claim.

*Arecibo,* 988 F.2d 252, 262–263 (1 Cir., 1993).

Lastly, the plaintiffs can raise their claim seeking the return of their property in the course of the state proceedings. Indeed, although the plaintiffs have a mechanism by which to seek the return of property alleged to have been illegally seized in the two searches, *see* Mass. Gen. L. c. 276 § 3 and Superior Court Rule 61, they have taken no steps in the state court with respect to that property. (# 10)

The case which the plaintiffs contend "is remarkably similar to this case" is distinguishable. In *Richardson v. Miller,* 279 F.3d 1 (1 Cir., 2002), the plaintiff's lawsuit seeking the return of seized items was filed in state court, then removed to federal court and essentially resolved prior to the institution of state criminal charges. *Richardson,* 279 F.3d at 2 ("[T]he parties agreed that the City would return some of the seized materials to appellant. Because of the continuing investigation, however, most of the returned materials were to be photocopies rather than originals ... After continued negotiation between the parties, the City returned appellant's wallet and some of his personal papers.... Appellant was arrested soon thereafter and charged with four counts of credit card fraud.") The issue before the Court was whether Richardson, having been successful in having some of his seized items returned, was a prevailing party such that he was entitled to an award of attorneys' fees.

There is no mention of *Younger v. Harris in the Richardson* case, presumably because the *Younger* abstention doctrine did not apply on the facts. Even if the abstention doctrine would have been applicable, it may be waived. *See Kyricopoulos v. Town of Orleans,* 967 F.2d 14, 15 and n. 1 (1 Cir., 1992). Thus, that the City may not have raised *Younger* abstention in the Richardson case, assuming the doctrine

applied on the facts, would not foreclose the defendants from interposing the doctrine in the case at bar.

There are exceptions to the *Younger* abstention doctrine which have been described by the Supreme Court:

Although the cost, anxiety, and inconvenience of having to defend against a single criminal prosecution alone do not constitute 'irreparable injury' in the 'special legal sense of that term,' *id.,* at 46, 91 S.Ct., at 751, the Court in *Younger* left room for federal equitable intervention in a state criminal trial where there is a showing of 'bad faith' or 'harassment' by state officials responsible for the prosecution, *id.,* at 54, 91 S.Ct., at 755, where the state law to be applied in the criminal proceeding is 'flagrantly and patently violative of express constitutional prohibitions,' *id.,* at 53, 91 S.Ct., at 755, or where there exist other 'extraordinary circumstances in which the necessary irreparable injury can be shown even in the absence of the usual prerequisites of bad faith and harassment.' *Ibid.* In the companion case of *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 [ (1971) ], the Court explained that '(o)nly in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate.' *Id.,* at 85, 91 S.Ct., at 677. *See Mitchum v. Foster,* 407 U.S. 225, 230–231, 92 S.Ct. 2151, 2155–2156, 32 L.Ed.2d 705 [ (1972) ].

*Kugler v. Helfant,* 421 U.S. 117, 124, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975).

■ The plaintiffs have not argued that any exception is relevant here, and it is their burden to "make sufficient specific

factual allegations which support an inference that the particular exception applies and [they] cannot rely on general claims of misconduct." *Saunders v. Flanagan*, 62 F.Supp.2d 629, 634 (D.Conn., 1999). While there certainly are allegations in the complaint to the effect that the defendants wrongfully took items such as money and videotapes while executing the search warrants and that this conduct constituted criminal acts, there is no allegation that the criminal proceedings currently ongoing in the state were being brought and prosecuted in bad faith.[9] So, too, while the plaintiffs contend that the allegedly wrongful seizure of their property is an example of continuing harassment by the defendants, they do not challenge the legitimacy of the state criminal proceedings or contend that the charges were brought simply for harassment purposes.

■ In sum, the legality of the searches conducted at the plaintiffs' home in July 2008 pursuant to the Superior Court warrants will be decided in the context of the pending state criminal charges; "[e]xcept in the most extraordinary cases, a federal court must presume that state courts, consistent with the imperatives of the Supremacy Clause, *see* U.S. Const. art. VI, are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." *Casa Marie, Inc.*, 988 F.2d at 262 (citations and footnote omitted). No "extraordinary circumstances, where the danger of irreparable loss is both great and immediate" (*Younger*, 401 U.S. at 45, 91 S.Ct. 746) exist as would justify the federal court in stepping in and superceding the state court's judgment on this question by issuing an injunction ordering the return of certain property seized during the searches.[10] Because the *Younger* abstention doctrine applies on the facts of this case and the plaintiffs have neither invoked nor established the applicability of any exception to that doctrine, it shall be recommended that the plaintiffs' federal claim regarding the return of their property be dismissed.

### B. *Case or Controversy*

■ The plaintiffs' second and third requests for equitable relief, i.e., an injunction ordering the defendants to stay away from the Kennedys outside of Billerica and ordering the defendants "to allow the Lowell Police to serve any warrants or carry out any other police activities with respect to the Kennedys that can be effected in Lowell," shall be addressed in tandem. In neither instance have the plaintiffs alleged an actual case or controversy, and the claims must be dismissed under Rule 12(b)(6).

The Supreme Court has written that:

Plaintiffs in the federal courts 'must allege some threatened or actual injury resulting from the putatively illegal ac-

---

**9.** "[B]ad faith will be found and federal intervention into state proceedings will be warranted where the court determines that there is no reasonable expectation of the state defendants obtaining a favorable outcome." *Saunders*, 62 F.Supp.2d at 635 (citation omitted).

**10.** Extraordinary circumstances may be found, for example, where the state statute or rule under which the federal plaintiff is prosecuted or sued in state court is 'flagrantly and patently violative of express constitutional prohibitions in every clause,' or where the federal plaintiff demonstrates " 'bad faith [prosecution], harassment or any other unusual circumstances that would call for equitable relief.' " *Malachowski v. City of Keene*, 787 F.2d 704, 708 (1st Cir.), *cert. denied*, 479 U.S. 828, 107 S.Ct. 107, 93 L.Ed.2d 56 (1986); *Landrigan v. City of Warwick*, 628 F.2d 736, 743 (1st Cir.1980).
*Casa Marie, Inc.*, 988 F.2d at 263 n. 9.

tion before a federal court may assume jurisdiction.'... Abstract injury is not enough. It must be alleged that the plaintiff 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged statute or official conduct.... The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'

*O'Shea v. Littleton*, 414 U.S. 488, 493–494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (citations and footnotes omitted).

The allegations in the complaint with respect to the request that an order issue directing the defendants to stay away from the plaintiffs outside of Billerica are as follows. The July 15, 2006 Order issued by Judge Saris ordering Billerica Police Officer Mark Tsoukalas (an officer not named in this suit) not to drive by the plaintiffs' house in Lowell "led to a temporary lull in confrontations" between the plaintiffs and the defendants. (# 1 ¶ ¶ 13, 14 and Exh. B–1) There are no facts alleged in the complaint to suggest that the Billerica police did anything *in Lowell* until approximately two years later on July 1, 2008 when the defendants executed the first search warrant in the plaintiffs' home. (# 1 ¶ 20 and Exh. D) The only other action the Billerica police are alleged to have taken *in Lowell* was the execution of the second search warrant on July 18, 2008. (# 1 ¶ 33 and Exh. H, I) Although the plaintiffs have alleged that they have had a long and volatile history with the defendants, their own allegations reflect that apart from executing two search warrants they obtained from a state court judge in July of 2008, the Billerica Police had no contact with the Kennedys *in Lowell* for a two year period. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects."

*O'Shea*, 414 U.S. at 495–496, 94 S.Ct. 669. The allegations of the complaint regarding two isolated, facially legal actions of the defendants vis-a-vis the plaintiffs in Lowell during a two year period simply do not support any "continuing, present adverse effects" of any "past exposure to legal conduct" such as to warrant the issuance of an injunction.

The last basis for injunctive relief, that any future warrants against the Kennedys in Lowell be effectuated by the Lowell Police, is equally hypothetical.

Of course, past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. But here the prospect of future injury rests on the likelihood that respondents will again be arrested for and charged with violations of the criminal law.... Apparently, the proposition is that if respondents proceed to violate an unchallenged law and if they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed. But it seems to us that attempting to anticipate whether and when these respondents will be charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture. *See Younger v. Harris*, supra, at 41–42, 91 S.Ct. at 749.

*O'Shea*, 414 U.S. at 496–497, 94 S.Ct. 669.

It is "wholly conjectural" that in the future a state court judge will find probable cause to issue a search warrant that will authorize the search of the Kennedys' residence in Lowell. Such speculation does not support the pre-emptive strike that the plaintiffs seek, i.e., an injunction ordering the Lowell Police to effectuate any future search of the plaintiffs' home in Lowell.

At this juncture there simply is no live controversy over which the Court could exercise jurisdiction.

### V. Recommendation

For the reasons stated, I RECOMMEND that the Defendants' Motion To Dismiss (# 4) be ALLOWED.

### VI. Review By The District Judge

The parties are hereby advised that pursuant to Rule 72, Fed.R.Civ.P., any party who objects to this recommendation must file a specific written objection thereto with the Clerk of this Court within 10 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the recommendation, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b), Fed.R.Civ.P., shall preclude further appellate review. *See Keating v. Secretary of Health and Human Services,* 848 F.2d 271 (1 Cir., 1988); *United States v. Emiliano Valencia–Copete,* 792 F.2d 4 (1 Cir., 1986); *Scott v. Schweiker,* 702 F.2d 13, 14 (1 Cir., 1983); *United States v. Vega,* 678 F.2d 376, 378–379 (1 Cir., 1982); *Park Motor Mart, Inc. v. Ford Motor Co.,* 616 F.2d 603 (1 Cir., 1980); *see also Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).