**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 10 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

FRANK TIPPETT and JUDY RAND,

      Plaintiffs-Appellants,

v.

UNITED STATES OF AMERICA and
ROBERT LOWE, dba Best
Adventures,

      Defendants-Appellees.

No. 95-8080

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 95-CV-77)

---

Submitted on the briefs:

Alan C. Sang of Carmen, Beauchamp, & Sang, Deerfield Beach, Florida, and
Terry W. Mackey and Mark R. Stewart of Hickey, Mackey, Evans, Walker &
Stewart, Cheyenne, Wyoming, for Plaintiffs-Appellants.

David D. Freudenthal, United States Attorney and Nicholas Vassallo, Assistant
United States Attorney, Cheyenne, Wyoming, for Defendants-Appellees.

---

Before BRISCOE and MURPHY, Circuit Judges, and VAN BEBBER,[*] District
Judge.

---

[*]      Honorable G. Thomas Van Bebber, Chief Judge, United States
District Court for the District of Kansas, sitting by designation.

BRISCOE, Circuit Judge.

The district court dismissed plaintiffs' claims brought under the Federal Tort Claims Act, (FTCA) 28 U.S.C. §§ 1346(b) and 2671-80, for lack of subject matter jurisdiction, finding that the discretionary function exception to the limited waiver of sovereign immunity contained in the FTCA barred plaintiffs' claims.[2] We affirm.

Plaintiff Frank Tippett and his wife Judy Rand were members of a guided snowmobile tour exploring parts of Yellowstone National Park in February 1993. Plaintiffs' group entered the park through the south gate and, as they began up the road toward Old Faithful, they encountered a moose standing in the road. When a group of snowmobilers ahead of plaintiffs' group attempted to pass the moose, the moose charged one of the snowmobiles and knocked two passengers to the ground. The moose then proceeded south past plaintiffs' vehicles, and plaintiffs' group proceeded into the interior of the park.

---

[2]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

Mr. Dave Phillips, a Yellowstone park ranger, learned of the moose's presence and monitored its activities during the day. At the end of the day, he observed several groups of snowmobilers going southbound who successfully passed the moose on their way out of the park.[3] When plaintiffs' group approached the moose in the course of their departure, Ranger Phillips directed them to pass the moose on the right, staying in line with other snowmobilers.[4] As Mr. Tippett attempted to go around the moose, the animal charged his vehicle and kicked in his windscreen striking him in the helmet and knocking him off the snowmobile. Mr. Tippett suffered a broken neck from which he has since recovered; the moose broke one of its legs as a result of the encounter and had to be destroyed.

Plaintiffs filed negligence and loss of consortium claims against the United States under the FTCA. As noted above, the district court dismissed plaintiffs' claims finding them barred by the discretionary function exception to the Act. Because resolution of the jurisdictional issue in this case was intertwined with the

---

[3]     Two hundred eighty-eight snowmobiles, carrying 350 people, entered the park at the south entrance on this particular day.

[4]     The evidence is in dispute regarding whether Ranger Phillips simply shared his observations with plaintiffs or actively directed them to take a certain course. The district court did not resolve this issue, as it was unnecessary to do so. As we discuss below, if plaintiffs' claims are barred by the discretionary function exception, the shield of the FTCA will preclude liability for the United States even where Ranger Phillips' conduct was negligent. See Domme v. United States, 61 F.3d 787, 789 (10th Cir. 1995).

merits, see Wheeler v. Hurdman, 825 F.2d 257, 259 (10th Cir.), cert. denied, 484 U.S. 986 (1987), the district court was required to convert the government's 12(b)(1) motion into a Rule 12(b)(6) motion or a Rule 56 motion for summary judgment, see Holt, 46 F.3d at 1003. Because the district court considered matters outside of the pleadings, and in an exercise of our plenary power, we treat the government's motion as a motion for summary judgment under Rule 56, see Redmon ex rel. Redmon v. United States, 934 F.2d 1151, 1155 (10th Cir. 1991).

Under the FTCA, the United States waives its sovereign immunity with respect to certain injuries caused by government employees acting within the scope of their employment. 28 U.S.C. § 1346(b). The FTCA contains an exception to this broad waiver of immunity, however, for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id. § 2680(a). Section 2680(a) is commonly referred to as the "discretionary function exception" to the FTCA. See Daigle v. Shell Oil Co., 972 F.2d 1527, 1537 (10th Cir.1992). "The discretionary function exception . . . marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." United States v. S.A. Empresa de Viacao Aerea Rio

Grandense (Varig Airlines), 467 U.S. 797, 808 (1984). If the discretionary

function exception applies to the challenged governmental conduct, the United

States retains its sovereign immunity, and the district court lacks subject matter

jurisdiction to hear the suit. See Johnson v. United States Dep't of Interior, 949

F.2d 332, 335 (10th Cir.1991). "[A]pplication [of the exception] therefore

presents a threshold jurisdictional determination which we review de novo."

Daigle, 972 F.2d at 1537.

In order to determine whether the discretionary function exception applies

in cases brought under the FTCA, we utilize the two-prong analysis of Berkovitz

ex rel. Berkovitz v. United States, 486 U.S. 531 (1988). Under that scheme, we

determine (1) whether the action at issue was one of choice for the government

employee; and (2) if the conduct involved such an element of judgment, "whether

that judgment is of the kind that the discretionary function exception was

designed to shield." Id. at 536.

Citing Aslakson v. United States, 790 F.2d 688, 693 (8th Cir. 1986),

plaintiffs argue that because there was an existing park safety policy in place,

Ranger Phillips had no discretion in the situation he encountered. In Aslakson,

the plaintiff was injured when the aluminum mast of his sailboat made contact

with electrical power lines owned and operated by an agent of the United States.

In rejecting the government's claim of immunity, the court reasoned that the

government's decision was one involving "safety considerations under an established policy rather than the balancing of competing policy considerations," and that the exception could not apply.  See id. at 693.

Plaintiffs point to Chapter 8:5 of the Management Policies, U.S. Department of the Interior National Park Service, 1988, which provides that "[t]he saving of human life will take precedence over all other management actions."  Appellants' App. at 56.  Plaintiffs contend that this is the type of specific mandatory directive which Ranger Phillips failed to observe, and which renders the action at issue here nondiscretionary.  We disagree because we find the cited directive too general to remove the discretion from Ranger Phillips' conduct.

In Varig Airlines, 467 U.S. 797, the Supreme Court considered an action asserting claims against the FAA for negligence in the spot checking of airplanes. Despite the fact that the FAA had a statutory duty to promote the safety of American air transportation, decisions surrounding the implementation of that policy, including the spot checking program, were protected by the discretionary function exception.  See id. at 820-21; see also Kennewick Irrigation Dist. v. United States, 880 F.2d 1018, 1026 (9th Cir. 1989)(noting in a suit involving breaks in an irrigation district's canal, that "[a] general statutory duty to promote

safety, as was incumbent upon the FAA in <u>Varig</u>, would not be sufficient [to remove discretion].").

In a similar vein, this court in <u>Daigle</u>, 972 F.2d at 1538, explained that "[i]f a specific and mandatory statute, regulation or policy is applicable" the exception does not apply. Under that standard, we rejected the contention that the health and safety goals of CERCLA were the type of specific and mandatory direction sufficient to remove the actions of defendants in that case from the discretionary function exception. <u>Id.</u> at 1540. Similarly, here, the general goal of protecting human life in the nation's national parks is not the kind of specific mandatory directive that operated to divest Ranger Phillips of discretion in the situation he faced. <u>See</u> <u>Berkovitz</u>, 486 U.S. at 536 (stating that "the discretionary function exception will not apply when a federal statute, regulation, or policy <u>specifically</u> <u>prescribes</u> a course of action for an employee to follow")(emphasis added). The district court was correct to conclude that the actions of Ranger Phillips were discretionary.

Turning to the second prong of the <u>Berkovitz</u> analysis, plaintiffs argue that this case does not implicate public policy and thus their claims against the United States should have survived the motion to dismiss. Because we have held above that the conduct here involved discretionary judgment, we must now determine "whether that judgment is of the kind that the discretionary function exception

was designed to shield." Id. at 536. The "exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." Id. at 537. The focus of our analysis, therefore, is on the nature of the action taken and whether it is subject to policy analysis. United States v. Gaubert, 499 U.S. 315, 324-25 (1991). "Only decisions that are susceptible to policy analysis are protected by the discretionary function exception." Daigle, 972 F.2d at 1538 (quotations omitted).

It is clear that balancing the interest of conserving wildlife in the national parks with the opportunity for public access has been a cornerstone of park management since the creation of the national park system. This overarching policy concern in national park management is expressed in 16 U.S.C. § 1, enacted in 1916 at the creation of the National Park Service, which provides in relevant part that the purpose of the National Park Service is to

> promote and regulate the use of . . . national parks . . . by such means and measures as conform to the fundamental purpose of the said parks . . . which purpose is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

16 U.S.C. § 1. Other management policies expand on this goal of balancing the conservation of wildlife with the goal of public access to the national parks. See Management Policies, U.S. Dep't of the Interior National Park Service 1988, Appellee's Supp. App. at 60-89.

In determining whether the discretion exercised here is of the type the discretionary function exception was designed to shield, we are aided in our analysis by the existence of regulations which allow park employees discretion in situations similar to that faced by Ranger Phillips. The existence of these regulations creates a strong presumption that "a discretionary act authorized by the regulation[s] involves consideration of the same policies which led to the promulgation of the regulations." Gaubert, 499 U.S. at 324.

There are no specific regulations dealing with confrontations between wildlife and snowmobiles or other motorized vehicles. See Affidavit of Yellowstone Chief Ranger, Appellee's Supp. App. at 54. However, among the regulations guiding Ranger Phillips' conduct is the Ranger Operating Procedure dealing with the occasional need to temporarily close or restrict an area. That regulation provides:

> Decision/Action
>
> Any . . . road . . . should be temporarily closed by any
> NPS employee when imminent life threatening or
> potential serious injury situations exist . . . or there is an
> immediate serious threat to natural or cultural resources.
> . . .
>
> . . . .
>
> Resolution
>
> The District Ranger is responsible for resolving the
> cause of the restriction as soon as possible. Resolution

> alternatives may include actions to prevent or remove
> the threats to humans and/or resources, if possible, or
> allow natural activities to occur.

Yellowstone National Park Ranger Operating Procedure, id. at 91. While we realize that this directive indicates that a road "should" be closed under certain circumstances, possibly implying at least a limitation on discretion, the determination of when circumstances constitute an imminent life threatening situation or pose the risk of potential serious injury is clearly a discretionary one to be made on the basis of judgment, observation, and experience. Further, the regulation governing the resolution of any such situation expressly gives the ranger a choice among an unlimited number of actions, thus inarguably allowing employee discretion.

The second directive cited by the parties deals with stranded animals. While it is not clear whether this animal was "stranded," we do note that the directive provides in relevant part that

> In some cases the destruction of injured, dead, or stranded animals
> may be necessary. The destruction of a native animal is acceptable
> only when relocation is not a feasible alternative; the animal was
> injured or deceased through human-induced impacts (e.g. hunting,
> automobile collision); or human safety is a concern and the
> numbers/location of people cannot be effectively managed.

Natural Resources Management Guideline, Appellants' App. at 59. This directive fairly reflects the policy concerns underlying it: balancing the conservation of

-10-

wild animals with the interests of those who want to see them. The directive itself requires an exercise of discretion in its implementation. Thus, the existence of these two regulations allowing discretion to park employees creates the "strong presumption" described in Gaubert that Ranger Phillips' actions here were driven by the same policy concerns which led to the promulgation of the regulations in the first place. See Gaubert, 499 U.S. at 324. Because plaintiffs have not alleged any facts which would "support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime," id. at 324-25, we affirm the conclusion of the district court that the government has met the second prong of the Berkovitz test and is entitled to the protection of the discretionary function exception.

Plaintiffs rely heavily on our decision in Boyd v. United States ex rel. United States Army, Corps of Eng'rs, 881 F.2d 895 (10th Cir. 1989), in which we refused to extend the shield of the discretionary function exception where an agency of the United States failed to warn swimmers of a dangerous area in Tenkiller Lake in Oklahoma. In Boyd, however, the government's failure to warn swimmers of dangerous conditions was not connected to the policy which created the hazard, thus making the exception inapplicable. See Johnson, 949 F.2d at 338. The fact that Ranger Phillips' failure to somehow remove the moose to avoid its further contact with snowmobilers was connected to the policy of

balancing the conservation of wildlife with the interest of public access distinguishes this case from Boyd. Here, the conduct at issue was clearly an attempt by Ranger Phillips to balance the preservation of wildlife with the desire of the citizenry to access the park, and the analysis of Boyd is inapposite.

Plaintiffs argue strenuously that no shield should operate because plaintiffs were obeying the directive of Ranger Phillips when they attempted to drive around the moose. We agree with the government, however, that it is irrelevant whether Ranger Phillips directed plaintiffs into danger. Appellee's Br. at 18. Even if discretion is exercised negligently, the exception can operate to shield the government from liability. Domme v. United States, 61 F.3d 787, 789 (10th Cir. 1995). The relevant inquiry is whether Ranger Phillips was exercising discretion grounded in public policy when he directed plaintiffs around the moose. We hold that he was exercising such discretion and that the district court was correct to dismiss plaintiffs' claims against the United States.

The judgment of the district court is AFFIRMED with the clarification that plaintiffs' claims against the United States are dismissed with prejudice, see Wheeler, 825 F.2d at 259.