Dwyer v. USA                    CV-99-127-JD  11/17/99

UNITED STATES DISTRICT COURT FOR THE
                     DISTRICT OF NEW HAMPSHIRE


Christina B. Dwyer

        v.                            Civil No. 99-127-JD

United States of America


                         O R D E R



        Christina Dwyer sued the United States and Forest Ranger

David Neely under the Federal Tort Claims Act after sustaining

injuries in a fall from a trail in the White Mountain National

Forest.  Defendant Neely has since been dropped from the suit.

Dwyer brought three claims against the United States:  (1)

failure to warn of dangerous trail conditions; (2) failure to

adequately maintain the trail; and (3) intentional, willful,

malicious, or reckless behavior, or gross negligence by Ranger

Neely in directing her to use the trail in dangerous conditions.

        On June 4, 1999, the United States submitted a motion to

dismiss under Federal Rule of Civil Procedure 12(b)(1) or, in the

alternative, for summary judgment on all three claims (document

no. 3).  Dwyer objects only with respect to the third claim.

Therefore, the court dismisses Dwyer's first two claims and

proceeds to consider the third claim.

        On July 30, 1999, Dwyer submitted a motion for leave to

amend her complaint pursuant to Fed. R. Civ. P. 15(a) (document no. 7). Dwyer already amended her complaint once as of right. The United States objects.

Standard of Review

The United States' 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is predicated on the discretionary function exception to the Federal Tort Claims Act. See 28 U.S.C.A. § 2680(a). If the exception applies, the court lacks subject matter jurisdiction to hear the case. See id.; Magee v. United States, 121 F.3d 1, 4 (1st Cir. 1997). Therefore, the court must resolve the 12(b)(1) motion to dismiss first, before undertaking a summary judgment analysis on the merits of the plaintiff's claim. See Williams v. United States, 50 F.3d 299, 304-05 (4th Cir. 1995); see also United States v. Swiss Am. Bank, 1999 WL 685673, at *15 (1st Cir. Sept. 8, 1999) (holding that consideration of summary judgment motion should await determination of jurisdiction); Miller v. George Arpin & Sons, Inc., 949 F. Supp. 961, 965 (D.R.I. 1997) (determining jurisdiction under FTCA before considering summary judgment).

The party seeking to invoke the court's jurisdiction bears the burden of establishing by competent proof that jurisdiction exists. See Stone v. Dartmouth College, 682 F. Supp. 106, 107

2

(D.N.H. 1988) (citing O'Toole v. Arlington Trust Co., 681 F.2d 94, 98 (1st Cir. 1982)).  The court must "construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff."  Aversa v. United States, 99 F.3d 1200, 1210 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)).  "A plaintiff, however, may not rest merely on 'unsupported conclusions or interpretations of law.'"  Murphy, 45 F.3d at 522 (citing Washington Legal Found. v. Massachusetts Bar Found., 993 F.2d 962, 971 (1st Cir. 1993)).  When ruling on a 12(b)(1) motion, "the court may consider whatever evidence has been submitted, such as the depositions and exhibits submitted in this case."  Aversa, 99 F.3d at 1210.

Background

On October 13, 1996, Christina Dwyer was hiking with a companion in the White Mountain National Forest ("the Forest"), which is managed and maintained by the United States Forest Service.  Towards late afternoon, Dwyer's party began to set up camp in an area above the treeline, in what is known as the alpine zone.  The alpine zone contains alpine vegetation, some of which is fragile and susceptible to damage by hikers.

As Dwyer and her companion were setting up camp, Forest

3

Ranger Neely approached and informed them that, because of regulations designed to protect alpine vegetation, hikers were not permitted to camp above the treeline and they would have to move. Dwyer conveyed to Neely that they were tired, and it was evident that the weather was worsening and daylight was fading. Neely insisted that the two could not remain camped where they were, but he did not mention to Dwyer or her companion that an emergency shelter, the Lakes of the Clouds Hut ("the hut"), was located nearby.

Dwyer and her companion, along with some other hikers, proceeded to descend to a lower altitude along the Tuckerman Ravine Trail ("the trail") towards another shelter. While they were hiking, it began to rain. At an area of the trail called the Tuckerman Ravine Headwall, Dwyer slipped and fell approximately 200 feet and sustained serious personal injury.

## Discussion

"It is well settled that the United States, as sovereign, may not be sued without its consent." Murphy, 45 F.3d at 522 (citing United States v. Dalm, 494 U.S. 596, 608 (1990)). "Jurisdiction must be found in an express Congressional waiver of immunity or consent to be sued." Id. One such express waiver is the Federal Tort Claims Act ("FTCA"), 28 U.S.C.A. §§ 1346(b),

4

2671-2680.  See Attallah v. United States, 955 F.2d 776, 782 (1st Cir. 1992).  The FTCA gives federal district courts jurisdiction to adjudicate claims for damages against the United States "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ."  28 U.S.C.A. § 1346(b).

The FTCA's waiver of immunity is limited, however, by several statutory exceptions.  One of these is the discretionary function exception, which preserves the government's immunity from "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C.A. § 2680(a); see Attallah, 955 F.2d at 782.  The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."  United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines), 467 U.S. 797, 808 (1984).  If the discretionary function exception applies to a particular claim, then the district court lacks subject matter jurisdiction to hear that claim.  See Magee, 121

5

F.3d at 3.

To analyze whether the discretionary function exception applies to a certain claim, the court must examine whether the conduct challenged by that claim is "'of the nature and quality that Congress intended to shield from tort liability.'" Irving v. United States, 162 F.3d 154, 162 (1st Cir. 1998) (en banc) (quoting Varig Airlines, 467 U.S. at 813), cert. denied, 1999 WL 315281 (U.S. Oct. 4, 1999). The United States Supreme Court has created a two-step process to guide courts through this inquiry. See United States v. Gaubert, 499 U.S. 315, 322-23 (1991); Berkovitz v. United States, 486 U.S. 531, 536 (1988); Shansky v. United States, 164 F.3d 688, 690-91 (1st Cir. 1999). The first step is to identify the conduct that caused the plaintiff's harm and determine whether that conduct is discretionary. See Shansky, 164 F.3d at 691; Irving, 162 F.3d at 162. The second step is to determine whether "the exercise of discretion involves (or, at least, is susceptible to) policy-related judgments." Id.

A.   Is the conduct at issue discretionary?

The discretionary function exception applies to "actions that are discretionary in nature, acts that 'involve an element of judgment or choice.'" Gaubert, 499 U.S. at 322 (quoting Berkovitz, 486 U.S. at 536). The nature of the conduct controls

6

the inquiry, not the status of the actor.  Gaubert, 499 U.S. at 322.  "[W]hen a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow . . . the employee has no rightful option but to adhere to the directive," and his conduct is not discretionary.  Berkovitz, 486 U.S. at 536.  But if no such mandatory rule prescribes the employee's actions, and he is free to decide what course of action he will take in a given situation, then his conduct is discretionary.  See, e.g., Shansky, 164 F.3d at 691-92 (absence of mandatory policy meant employee's conduct was discretionary); Magee, 121 F.3d at 4 (absence of particularized course of conduct left discretion to employees).

The conduct at issue in this case is Ranger Neely's instruction to Dwyer to leave the alpine zone and his decision not to allow her to spend the night in the Lakes of the Clouds Hut.  Dwyer alleges that Neely's actions were not discretionary because he was bound by a mandatory Forest Service policy that required him, under certain circumstances, to offer use of the hut to hikers.  Dwyer claims that by ordering her down the mountain and refusing to offer her the use of the hut, Neely violated this mandatory policy, and consequently his decision was not discretionary.

To support her contention that Neely was bound by mandatory

7

Forest Service policy, she points to declarations by Neely; Bradley Ray, Lead Snow Ranger for the Forest; and Kai-Uwe Allen, District Backcountry/Wilderness Supervisor for the Forest. These declarations fail to provide the support Dwyer seeks. Neely's declaration indicates that the rangers can allow people to stay in the hut, but not that the rangers are under any mandatory directive to offer the hut's use, even when an emergency exists.[1] Neither does Ray's declaration provide any evidence that a mandatory policy exists concerning the use of the hut in emergency situations.[2] The strongest language in support of Dwyer's position comes from Allen, who states that rangers are "expected" to consider various factors in deciding whether to

---

[1]Ranger Neely stated in his declaration:

When encountering individuals above the treeline, it is always an option for me to allow them to stay in the refuge room [in the basement of the hut]. . . . we strictly limit the availability of the refuge room to what we judge to be emergency situations, such as severe weather, ill-prepared or obviously exhausted hikers who would be at significant risk if directed to keep hiking, and unusually slippery trail conditions . . . This also was a decision fully within my discretion under Forest Service policies and regulations.

[2]The court does not express an opinion as to whether the conditions present at the time of Dwyer's encounter with Ranger Neely, or at the time of her accident, constitute an emergency under any standard.

order someone off the alpine vegetation, and that the rangers "would" order someone to move unless conditions were sufficiently severe to warrant use of the hut. However, Allen specifically states in a supplementary declaration that no mandatory rule existed that instructed rangers to take any particular course of action when confronting campers in the alpine zone. Indeed, all of the declarations state unequivocally that rangers exercise discretion in their efforts to advance Forest Service goals.

Even if the declarations provided Dwyer with better support for her position, the First Circuit has made clear that written statutes, policies and regulations carry the greatest weight when determining whether a course of action is discretionary or prescribed. See Irving, 162 F.3d at 164-67. While "recognizing that informal sources sometimes may assist courts in deciding whether a function is discretionary," the First Circuit has said that where written regulations clearly indicate that conduct is discretionary, "there is no occasion to consult informal rules." Id. at 165. Relying on anecdotal testimony to discern the nature of agency policy "is usually a last-ditch resort." Id. at 166.

Dwyer relies entirely on the declarations discussed above to support her claim that a mandatory policy existed which prescribed Neely's course of action. She has not cited any of the written statutes, regulations, policy manuals or handbooks

9

pertinent to this case. Furthermore, upon review of the record, the court does not find adequate support for a mandatory policy. Therefore, the court cannot reasonably infer that Ranger Neely's actions violated a mandatory Forest Service policy.

B.   Does the discretionary conduct involve, or is it susceptible to, policy-related judgments?

For the discretionary function exception to apply, the conduct must be discretionary and it must involve, or be susceptible to, policy-related judgments. See Shansky, 164 F.3d at 691; Irving, 162 F.3d at 162. There is a presumption that when a statute, regulation, or agency guidelines allow an employee to exercise discretion, if the employee does exercise discretion, his actions are grounded in policy considerations. See Gaubert, 499 U.S. at 324; Irving, 162 F.3d at 168. Therefore, to prevail on this point, Dwyer must overcome the Gaubert presumption by showing that Neely's actions were not susceptible to policy analysis. See Shansky, 164 F.3d at 692; Irving, 162 F.3d at 168.

Dwyer cites cases holding that a violation of a previously adopted safety policy falls outside of the discretion Congress intended to shield from liability. See Summers v. United States, 905 F.2d 1212 (9th Cir. 1990); Mandel v. United States, 793 F.2d

10

964 (8th Cir. 1986).  But unlike those cases, there is insufficient evidence here that there was a previously adopted safety policy concerning the management of hikers in the alpine zone.[3]  See Aslakson v. United States, 790 F.2d 688, 693 (8th Cir. 1986) (noting the difference between a decision involving "safety considerations under an established policy rather than the balancing of competing policy considerations").  To the contrary, the evidence indicates that the Forest Service and its rangers routinely balance safety interests with other interests, including public access to the Forest and preservation of the Forest's natural resources.  In the absence of a specific,

---

[3]This distinction is illustrated in Mandel, where a National Park Service Ranger directed the plaintiff to swim in a river and the plaintiff subsequently dove into the water and was injured. See Mandel, 793 F.2d at 966.  The Eighth Circuit held that the discretionary function exception did not apply because the Park Service had taken specific precautions to warn swimmers about submerged rocks in the river, and the ranger failed to provide the plaintiff with a similar warning.  See id. at 967-68. Compare Tippett v. United States, 108 F.3d 1194 (10th Cir. 1997), where a National Park Ranger directed the plaintiff to drive his snowmobile past a moose, resulting in an encounter with the moose that left the plaintiff injured.  See id. at 1196.  The Tenth Circuit held that the discretionary function exception applied because there was no established safety policy governing the situation, and because the plaintiffs did not allege any facts indicating that the ranger's decision was not grounded in policy. See id. at 1197-99.  In both cases, a ranger directed someone into a dangerous situation, and may well have done so negligently.  However, the discretionary function exception analysis required different outcomes.

11

established safety policy, the First Circuit has rejected a general "safety exception" to the discretionary function. See Shansky, 164 F.3d at 693. To remove decisions concerning safety from the Forest Service's discretion would ignore the fact that safety, as important as it is, conflicts with other important concerns that greatly affect the experience of people who visit the National Forests.

Dwyer also argues that the relevant legal issue is whether Neely, in deciding to order Dwyer out of the alpine zone, furthered the Forest Service's policy of protecting alpine vegetation. However, this is an incorrect interpretation of the law. It is irrelevant whether Neely actually engaged in policy analysis when he made his decision to order Dwyer out of the alpine zone, or whether his decision furthered the policy goals of the Forest Service. Shansky, 164 F.3d at 692; Irving, 162 F.3d at 166. The proper inquiry is whether Neely's decision was informed by public policy considerations. See id. Dwyer's argument fails to adequately address this issue, and therefore fails to overcome the Gaubert presumption. See Irving, 162 F.3d at 168.

In sum, Neely's decision to direct Dwyer out of the alpine zone was discretionary, and it was susceptible to policy-related judgments. Therefore, the discretionary function exception to

12

the Federal Tort Claims Act applies to Dwyer's third claim, depriving this court of subject matter jurisdiction to hear the claim.

C.    Motion to Amend Complaint

Dwyer moves for leave to amend her complaint pursuant to Federal Rule of Civil Procedure 15(a).  Dwyer's proposed amendment would add a statement to her complaint alleging that Ranger Neely violated a Forest Service rule which mandates "the use of emergency shelters under such dangerous conditions."

Rule 15(a) encourages the court to grant leave to amend when justice requires it.  Fed. R. Civ. P. 15(a).  The court should deny leave to amend, however, if the proposed amendment would be futile.  See Resolution Trust Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 59 (1st Cir. 1990).  The standard for futility generally is whether the complaint as amended would survive a motion to dismiss under Rule 12(b)(6).  See Glassman v. Computervision Corp., 90 F.3d 617, 623 (1st Cir. 1996).  But when the defendant has already moved for summary judgment and the plaintiff moves to amend, the plaintiff must show that the proposed amendments are supported by substantial and convincing evidence.  See id. at 623.

Dwyer moved to amend her complaint after the United States moved for dismissal or, in the alternative, for summary judgment. Therefore, she must show that her proposed amendment is supported by substantial and convincing evidence.  As the court has already discussed, Dwyer has failed to show sufficient evidence to infer that a mandatory rule existed concerning usage of the hut.[4] Moreover, Dwyer's complaint already alleges that Neely "failed to follow all applicable policies, rules and regulations in the performance of his duties," and the parties have addressed this issue in their filings.  Therefore, the court finds that the proposed amendment is futile.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 3) is granted.  The plaintiff's motion to amend her

---

[4]The standard for drawing inferences in favor of the plaintiff is essentially the same under Rules 12(b)(1) and 12(b)(6).  See Murphy, 45 F.3d at 522.  The court has explained above why Dwyer's claim fails under this standard.  Therefore, her motion to amend would be denied even by the general standard for futility, let alone the higher Gold standard applicable after a motion for summary judgment has been filed.

14

complaint (document no. 7) is denied.  The clerk shall enter judgment and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

November 17, 1999

cc:   Eugene A. DiMariano Jr., Esquire
      Gretchen Leah Witt, Esquire